TROUTMAN PEPPER HAMILTON SANDERS LLP
Michael J. Whitton (SBN 160483)
michael.whitton@troutman.com
11682 El Camino Real, Suite 400
San Diego, CA 92130
Telephone:   858.509.6000
Facsimile:   858.509.6040

TROUTMAN PEPPER HAMILTON SANDERS LLP
Peter N. Villar (SBN 166797)
peter.villar@troutman.com
5 Park Plaza, Suite 1400
Irvine, CA 92614
Telephone:   949.622.2700

BASS SOX MERCER
Jason T. Allen, Esq, *pro hac vice forthcoming*
jallen@gsm-law.com
W. Kirby Bissell, Esq., *pro hac vice forthcoming*
kbissell@gsm-law.com
2822 Remington Green Cir.
Tallahassee, Florida 32308
Telephone: 850-878-6404
Facsimile: 850-942-4869

Attorneys for Plaintiff
Gen 2 H-Cars, Inc. d/b/a Frank Hyundai

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| GEN 2 H-CARS, INC., D/B/A FRANK HYUNDAI,<br><br>                  Plaintiff,<br><br>    vs.<br><br>HYUNDAI MOTOR AMERICA, INC.,<br><br>            Defendant. | Case No.   **'23CV1836 W    BGS**<br><br>**COMPLAINT** |

163720665

### FIRST COMPLAINT AND DEMAND FOR A JURY TRIAL

Plaintiff, GEN 2 H-CARS, INC. d/b/a FRANK HYUNDAI ("Frank Hyundai" or "Plaintiff") hereby files this Complaint and Demand for Jury Trial against Defendant, Hyundai Motor America, Inc. ("HMA"). Frank Hyundai seeks to recover damages it suffered as a result of HMA's illogical, bad-faith, and unreasonable actions relating to Frank Hyundai's attempts to comply with HMA's Accelerate Program. HMA's same actions also frustrated Frank Hyundai's attempts to divest itself of its franchise and receive fair market value for the same. Frank Hyundai seeks to sell its Hyundai franchise. But, HMA's conduct is creating illegal obstacles and frustrating Frank Hyundai's ability to receive fair market value for its franchise. In support thereof, Frank Hyundai asserts as follows:

### INTRODUCTION

HMA, the distributor of Hyundai-brand new motor vehicles in California and throughout the country, is currently engaged in a cutthroat competition to grow its market share, increase its brand awareness and break through into the top tier of main-line automotive manufacturers and distributors in the United States. HMA has had a quite successful decade, going from automotive afterthought to a significant player in the United States motor vehicle marketplace. However, to continue its rise, HMA wants to be discussed in the same breath as Toyota, Honda, and Subaru when it comes to foreign, non-luxury automotive manufacturers and distributors in the United States. And, in order to get there, HMA is not above coercing its franchisee-new-motor-vehicle-dealer partners, engaging in conduct that violates the California Vehicle Code and the Automobile Dealers Day in Court Act, breaching contracts, operating in bad faith and, even at a more basic level, treating its partners or prospective partners unethically and unprofessionally. Unfortunately, Frank Hyundai experienced (and continues to experience) the means HMA will undertake to reach the ends it seeks.

Currently, HMA is engaged in a nationwide push to get its independent, franchised dealerships to update their brick-and-mortar locations, ostensibly to

163720665

improve Hyundai's brand image. And while HMA finds significant benefit in such upgrades, franchised dealerships are saddled with various local zoning requirements, long-existing real estate holdings, saturated urban areas without viable locations for dealerships and a host of other problems that HMA simply deems to be inconsequential obstacles to implementing its unilaterally-imposed plans.

Frank Hyundai sits at the south end of the Mile of Cars on National City Boulevard. This area is a nationally-known mecca for the purchase of a new motor vehicle, having its first dealership open there in 1904 and now housing seventeen different new motor vehicle franchises in an approximately one-mile stretch of road. By all accounts, there are few places in the country that are better suited to the sale of new motor vehicles than where Frank Hyundai is currently located. And unsurprisingly, there is no available commercial real estate on or around the Mile of Cars where a new motor vehicle dealership could theoretically be located.

Thus, one could understand Frank Hyundai's frustration when it learned that HMA was telling multiple potential purchasers of its Hyundai franchise and related assets that they would need to find a larger piece of replacement real estate, totaling approximately five, contiguous acres, on the Mile of Cars, in order to be approved to purchase Frank Hyundai's assets. Notably, Frank Hyundai's first contracted purchaser was approved by Subaru and Toyota to purchase Frank Hyundai's affiliated Subaru and Toyota franchises on the Mile of Cars. Moreover, HMA had recently approved Frank Hyundai's facility plans at its current location, and thus, the about-face with Frank Hyundai's purchaser was clearly not in good faith. In short, HMA targeted Frank Hyundai with its usual, nefarious tactics in an attempt to use its position of leverage to extort benefits for itself at the expense of Frank Hyundai and its ownership. After HMA's unreasonable demands on Frank Hyundai's first potential purchaser, which was under contract to buy Frank Hyundai's franchise as well as its related Subaru and Toyota franchises, that purchaser moved forward with only purchasing the Subaru and Toyota franchises and the Hyundai franchise was

removed from the deal.  This meant that Frank Hyundai was not able to extract full value from its Hyundai franchise because the purchaser could not enjoy the economies of scale that came with the operation of three (3) total dealerships on the Mile of Cars and because the value of expensive dealership franchises and related assets has declined with rising interest rates and a slowing economy.

Thereafter, Frank Hyundai diligently remarketed its dealership and found a substitute purchaser, albeit for substantially less money than the original purchaser. Frank Hyundai submitted that potential sale to HMA for approval.  Perhaps predictably, that buyer backed out too, again after speaking with HMA and being told it needed to purchase more land to relocate the dealership and build a new facility as well.  In fact, Frank Hyundai can identify numerous additional potential purchasers that were very interested in purchasing its Hyundai franchise, but after speaking with representatives of HMA, namely Chad Filiault, or otherwise learning about HMA's bad faith and illegal demands to the first potential purchaser and/or to Frank Hyundai itself, the potential purchasers reported to Frank Hyundai that HMA's demands on the potential purchasers made closing on the sale infeasible, unprofitable and too frustrating to be worth their time.

Frank Hyundai's greatest desire is to sell its franchise, but HMA's conduct continues to prevent Frank Hyundai from moving on, receiving fair value for its business, and extricating itself from its franchise relationship with an unreasonable, malicious and coercive automotive distributor in HMA.

## **PARTIES**

1.     Plaintiff, GEN 2 H-CARS, INC. d/b/a Frank Hyundai, is a corporation organized and existing under the laws of the State of California, with its principal place of business at 3150 National City Blvd., National City, California 91950.

2.     Frank Hyundai qualifies as an "automobile dealer" pursuant to 15 U.S.C. § 1221(c).  Frank Hyundai also qualifies as a "dealer" pursuant to s. 285, is required to be licensed under s. 11700, and is a "new motor vehicle dealer" pursuant to s. 426,

- 3 -

163720665

1    all sections of the California Vehicle Code.  Further, Frank Hyundai is a franchisee
2    pursuant to s. 331.1 of the California Vehicle Code.

3        3.    Frank Hyundai operates a new motor vehicle dealership pursuant to its
4    Dealer Agreement and is authorized to sell Hyundai brand vehicles under the same
5    agreement.  Ex. A.  Frank Hyundai's Dealer Agreement is a franchise pursuant to s.
6    331 of the California Vehicle Code.  Frank Hyundai's Dealer Agreement with HMA
7    also qualifies as a "franchise" pursuant to 15 U.S.C. § 1221(b).

8        4.    Defendant, HYUNDAI MOTOR AMERICA, INC., is a corporation
9    organized and existing under the laws of the State of California, with its principal
10    place of business at 10550 Talbert Avenue, Fountain Valley, California 92708.
11    HMA's registered agent in California is the CSC – Lawyers Incorporating Service at
12    2710 Gateway Oaks Drive, Suite 150N Sacramento, CA, 95833.

13        5.    HMA is engaged in the business of distributing new motor vehicles and
14    related parts and accessories in all 50 states, and is the sole authorized distributor in
15    the United States of Hyundai branded automobiles to a nationwide network of
16    franchised Hyundai dealers.

17        6.    HMA qualifies as an "automobile manufacturer" pursuant to 15 U.S.C.
18    § 1221(a).  HMA is also a "distributor" and "franchisor" pursuant to sections 296 and
19    331.2 of the California Vehicle Code.  And, HMA is required to be licensed under s.
20    11700.

21        7.    HMA is a subsidiary of Hyundai Motor Company ("HMC").  HMC,
22    through other subsidiaries, manufacturers both Hyundai and Genesis line-make new
23    motor vehicles.

24    **<u>JURISDICTION AND VENUE</u>**

25        8.    The Court has original jurisdiction over this matter pursuant 18 U.S.C. §
26    1331 because the lawsuit raises a substantial federal question under the Automobile
27    Dealers Day in Court Act, 15 U.S.C. § 1221 *et seq.*

28        9.    This Court has supplemental jurisdiction over Plaintiff's state law claims

163720665

1    pursuant to 28 U.S.C. § 1367.

2        10.    This Court has personal jurisdiction over HMA pursuant to 18 U.S.C. §§

3    1965(a) and (d).

4        11.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because this

5    is a judicial district in which a substantial part of the events or omissions giving rise

6    to Plaintiff's claims occurred.

7        **FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

8        Background on the Automobile Dealers Day in Court Act and
         California Motor Vehicle Franchise Act

9

10        12.    As a new motor vehicle dealership, Plaintiff is protected from certain

11    conduct and threats made by motor vehicle manufacturers, distributors or franchisors

12    by virtue of the Automobile Dealers Day in Court Act, 15 U.S.C. § 1221 *et seq.*, as

13    well as California's Motor Vehicle Franchise Practices Act, § 3000 *et seq.* and §

14    11700 *et seq.* of the California Vehicle Code (hereafter referred to collectively as the

15    "Dealer Acts").

16        13.    The Dealer Acts are remedial statutory schemes enacted to redress the

17    economic imbalance and unequal bargaining power between large automobile

18    manufacturers or distributors and local dealerships, protecting dealers from unfair

19    termination of their franchise agreements, manufacturers' or distributors' intentional

20    frustration of dealers' attempts to receive fair market value for their franchises when

21    they decide to get out of the business, and other retaliatory and coercive practices by

22    automobile manufacturers and/or distributors. The harm that can be caused by

23    distributors' abusive practices is exacerbated due to the extremely concentrated

24    market in which new motor vehicle dealers operate. Further, the Dealer Acts

25    recognize that a healthy motor vehicle dealer market is vital for consumers and the

26    public in the California and indeed, throughout the United States.

27        14.    The Dealer Acts allow automobile dealers, new motor vehicle dealers or

28    franchisees, such as Plaintiff, to bring legal claims against automobile manufacturers,

1    distributors, or franchisors, such as Defendant, for damages, costs of the suit for the

2    manufacturers', distributors', or franchisors' failure to act in good faith in performing

3    and enforcing the terms of their dealer and/or franchise agreement, among many other

4    bases.

5         15.    Similar protective legislation has been enacted throughout the United

6    States.  The United States Supreme Court has recognized the importance and validity

7    of these remedial statutes as explained by Justice Brennan in *New Motor Vehicle*

8    *Board v. Orrin W. Fox Co.*, which ruled upon a California Dealer Act provision:

> Dealers are with few exceptions completely dependent on the manufacturer for their supply of cars. When the dealer has invested to the extent required to secure a franchise, he becomes in a real sense the economic captive of his manufacturer. The substantial investment of his own personal funds by the dealer in the business, the inability to convert easily the facility to other uses, the dependence upon a single manufacturer for supply of automobiles, and the difficulty in obtaining a franchise from another manufacturer all contribute toward making the dealer an easy prey for domination by the factory. On the other hand, from the standpoint of the automobile manufacturer, any single dealer is expendable. The faults of the factory-dealer system are directly attributable to the superior market position of the manufacturer.

18    *New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 439 U.S. 96, 100 n. 4 (1978)

19    (*quoting* S. Rep. No. 2073, 84th Cong., 2d Sess., 2 (1956)).

20         16.    The Dealer Acts necessarily supersede the terms of the Dealer

21    Agreement.  Thus, to create balance in an otherwise inequitable contractual

22    relationship, United States and California statutory law overrides various provisions

23    of a franchise agreement and provides Plaintiff with additional statutory protections.

<u>Explanation of Incentive/Facility Programs Generally</u>

24         17.    Many manufacturers, including HMA, offer incentive programs for their

25    franchisees.  Ostensibly, participation in these incentive programs is optional, but

26    non-participating dealers are at a distinct disadvantage in price competition with their

27    competitors.

163720665

18.    Incentive programs are offered by manufacturers and distributors to entice dealers to adopt certain operational practices that they may not otherwise consider. Manufacturers and distributors see value in these practices, but dealers oftentimes do not see a significant return on the same investments.  These practices often include things like offering courtesy loaner vehicles to service customers, special training for dealership personnel, participation in preferred software systems for sales leads, service scheduling and other matters.

19.    Many incentive programs also include facility-related upgrades (or capital investments) where distributors require dealers to construct or renovate facilities to match the newest "brand-image."  The design, size, aesthetics, and virtually all specifications down to the floor tile and furniture are tightly-controlled by the distributor and represent a significant investment by the dealers.

20.    These incentive programs are almost always offered and paid on a per-vehicle basis, meaning that each incremental sale by a dealer results in additional incentive monies paid to the dealer.  Moreover, many of these programs are "stair-stepped" meaning that as a dealer hits higher volume targets it earns more in incentives on all sales for the relevant period.

21.    Incentive programs and stair-stepped derivatives are not illegal and are widely-used but they place the financial risk of these investments (many of which are not widely-shown or known to increase customer satisfaction, new motor vehicle sales, or other revenue for dealers or manufacturers/distributors) on dealers and not manufacturers and distributors.

22.    As most incentive programs are paid on a per-vehicle basis, the construction cost for facility-related requirements is not tied to the amount of incentive money a dealer can earn.  Obviously, higher-volume dealers will recoup their investment much quicker than smaller dealers.  Moreover, distributors almost always retain the right to end the incentive programs in their unilateral discretion leaving dealers with no guarantee they will ever see a full recoupment or return on

163720665

1    their investment in expensive facility updates.  For these reasons, many dealers are
2    wary of incentive programs.

3                              Hyundai Accelerate Program

4          23.    In conjunction with its expressed strong desire for separate exclusive
5    stand-alone facilities for each of the Hyundai and Genesis line-makes, HMA launched
6    the Hyundai Accelerate Brand Program ("Accelerate Program") in early 2020. The
7    Accelerate Program was relaunched due to pandemic-related delays on October 1,
8    2020, and is scheduled to run until June 30, 2026, but HMA retains the unilateral right
9    to cancel the Accelerate Program at any time. The Accelerate Program is an incentive
10   program that solely relates to renovation and construction of dealership facilities.

11         24.    Pursuant to the Accelerate Program, Hyundai dealers can earn monetary
12   incentives of up to 3% of the manufacturer's suggested retail price ("MSRP") for each
13   new vehicle sold if the Hyundai dealer constructs exclusive facilities (i.e., separate
14   from Genesis) for the sales and service of the Hyundai line-make in compliance with
15   HMA's image requirements for facilities.

16         25.    Dealers begin accruing these payments by enrolling in the program and
17   working with HMA's architecture firm and facilities team to arrive at approved
18   construction plans.

19         26.    Upon completion of construction, the accrued funds are released to the
20   dealer and the dealer continues to earn the percentage of MSRP on each new vehicle
21   sold until June 30, 2026, under the current version of the Accelerate Program.

22         27.    Notably, Frank Hyundai's dealership has been renovated to maintain its
23   image in accordance with most of HMA's requirements, but because of its long-
24   standing location on the Mile of Cars it has never had enough space to meet HMA's
25   guidelines in this respect.  Reinforcing the absurdity of HMA's guidelines, Frank
26   Hyundai is the highest-volume Hyundai dealer in California and the only Hyundai
27   dealer to win the JD Power Award of Excellence, despite operating from a facility
28   that HMA claims is too small and outdated.

Applicable Statutes

28.     The Automobile Dealers Day in Court Act provides that

> An automobile dealer may bring suit against any automobile manufacturer engaged in commerce, in any district court of the United States in the district in which said manufacturer resides, or is found, or has an agent, without respect to the amount in controversy, and shall recover the damages by him sustained and the cost of suit by reason of the failure of said automobile manufacturer from and after August 8, 1956, to act in good faith in performing or complying with any of the terms or provisions of the franchise, or in terminating, canceling, or not renewing the franchise with said dealer: Provided, That in any such suit the manufacturer shall not be barred from asserting in defense of any such action the failure of the dealer to act in good faith.

15 U.S.C. § 1222.

29.     The California's Motor Vehicle Franchise Practices Act, § 3000 *et seq.* and § 11700 *et seq.* of the California Vehicle Code, regulates a wide-range of conduct between distributors and/or franchisors and their franchisees and/or new motor vehicle dealers.

30.     Importantly, it provides that

> any licensee suffering a pecuniary loss because of any willful failure to by any other licensee to comply with any provision of Article 1 (commencing with Section 11700)…of Chapter 4 of Division 5…may recover damages and reasonable attorneys fees therefor in any court of competent jurisdiction.

§ 11726, Cal. Veh. Code.

31.     And, section 11713.3 forbids, among other things, a distributor, directly or indirectly through an affiliate, from

> To prevent, or attempt to prevent, a dealer from receiving fair and reasonable compensation for the value of the franchised business. There shall not be a transfer or assignment of the dealer's franchise without the consent of the manufacturer or distributor. The manufacturer or distributor shall not unreasonably withhold consent or condition consent upon the release, assignment, novation, waiver, estoppel, or modification of a claim or defense by the dealer.

163720665

§ 11713.3(e), Cal. Veh. Code.

32.    Section 11713.13 also forbids a distributor, directly or indirectly through an affiliate, from

> (c) Require, by contract or otherwise, a dealer to make a material alteration, expansion, or addition to any dealership facility, unless the required alteration, expansion, or addition is reasonable in light of all existing circumstances, including economic conditions and advancements in vehicular technology. This subdivision does not limit the obligation of a dealer to comply with any applicable health or safety laws…
>> (2) In any proceeding in which a required facility alteration, expansion, or addition is an issue, the manufacturer, manufacturer branch, distributor, distributor branch, or affiliate shall have the burden of proof…

§ 11713.13(c), Cal. Veh. Code.

<u>HMA's Coercive and Bad Faith Actions to Frustrate Plaintiff's Attempts to Renovate Its Facilities to Qualify for the Accelerate Programs and Sell Its Assets</u>

33.    In early 2020, Frank Hyundai set out to renovate its facility to comply with the Accelerate Program.  Notably, Frank Hyundai has been the largest volume Hyundai dealer in new motor vehicle sales in the San Diego metro market throughout the relevant time period.  Frank Hyundai has also been sales effective, as measured by HMA, throughout the relevant time period too.

34.    The process of renovating a dealership facility to comply with the Accelerate Program is long and arduous, involving substantial back and forth between the dealership and HMA regarding all aspects of the planned renovation, down to the color and style of tile on the floor of different areas of the dealership.

35.    HMA promulgates national, one-size-fits-all facility guidelines that are practically not achievable for many, perhaps even most, dealerships.

36.    Thus, a back and forth is undertaken between the dealership and HMA to modify the national guidelines in accordance with local zoning regulations, existing dealership facilities and real estate and a number of other factors out of the control of

163720665

the dealerships and HMA.

37.     Frank Hyundai worked with HMA in good faith to meet the requirements of the Accelerate Program, culminating in HMA providing Frank Hyundai with written confirmation that its plans for renovating its dealership were 75% approved in December 2021 and it could commence construction.

38.     Seventy-five percent approval is no small bench-mark because it allows the dealership to break ground on the new construction or renovation, so it is essentially HMA's confirmation that the remaining requirements can be met such that the dealership can begin expending funds on the renovation.

39.     Following this approval in December 2021, Frank Hyundai continued to work diligently and in good faith towards completing the final twenty-five percent approval required for full qualification of the renovation that HMA had already given Frank Hyundai approval to commence.

40.     However, HMA's representatives' communications with Frank Hyundai became less frequent and inconsistent, frustrating Frank Hyundai as it pushed towards one hundred percent approval.

41.     At the same time, Frank Hyundai was in discussions to sell its dealership assets to a third-party purchaser.

42.     The owners of Frank Hyundai also owned and operated Subaru and Toyota franchises also located on the Mile of Cars.

43.     The discussions for the sale of Frank Hyundai's assets included the sale of these affiliated dealerships' and brands' assets.

44.     In March 2022, HMA, for the first time, raised issue with the size of Frank Hyundai's real estate from which it operated and whether it could qualify for the Accelerate Program. Specifically, HMA's Robert Grafton informed Frank Hyundai's Ron Fornaca, that Frank Hyundai must relocate its Hyundai dealership to the location of a commonly-owned Subaru dealership.

45.     Obviously, these concerns were non-sensical by HMA since it had

163720665

1  already approved commencement of construction at the same site from which Frank

2  Hyundai was already operating and unsurprisingly there is not commercial real estate

3  available on the Mile of Cars for Frank Hyundai to purchase to satisfy HMA's

4  unreasonable demands.   Moreover, HMA's demand would place the Subaru

5  dealership at risk of breaching its dealership agreement with Subaru.

6      46.   Continuing its good faith and significant efforts to appease HMA, Frank

7  Hyundai volunteered vacant property its owners also owned nearby for additional

8  storage of inventory, which was also point of contention with HMA.

9      47.   Apparently appeased by Frank Hyundai's significant efforts, HMA

10  agreed to execute a "Facility Addendum" to Frank Hyundai's Dealer Agreement,

11  which acknowledged that Frank Hyundai could continue with construction and that

12  its plans met HMA's requirements for the Accelerate Program and/or GDSI 2.0. *See*

13  Ex. A, at pp. 39-42.  The Facility Addendum was also expressly incorporated into

14  Frank Hyundai's Dealer Agreement.

15      48.   Specifically, the Facility Addendum stated that

16  Dealer represents and HMA acknowledges, that Dealer has commenced
   renovation of his GDSI 2.0 facility in accordance with HMA's Corporate
17  Identity and Design Standards and Final Construction Documents
   approved by HMA's authorized supplier, AGI.  (emphasis added)
18

19      49.   GDSI 2.0 is another HMA phrase used to refer specifically to the facility

20  design elements required under the Accelerate Program.

21      50.   Believing this issue had been resolved, Frank Hyundai continued to

22  diligently fulfill its obligations to prepare to renovate its facilities in accordance with

23  the plans approved by HMA and attempt to reach one hundred percent compliance.

24      51.   Thereafter, HMA representatives requested Frank Hyundai execute

25  another letter, essentially reiterating its commitment to provide additional land for

26  inventory storage, as the marketplace for new motor vehicle sales might require, on

27  May 27, 2022, which reaffirmed that Frank Hyundai was approved in the GDSI 2.0

28  program.  HMA actually drafted the letter that it asked Frank Hyundai to sign, and

1    Frank Hyundai executed the letter, thereby, further evidencing HMA's approval of

2    Frank Hyundai's facility plans.

3        52.    HMA representatives indicated that this would be the final hurdle, minus

4    a few minor changes to light fixtures and other accoutrement in the design plans, to

5    receive 100% approval for GDSI 2.0 and/or the Accelerate Program.

6        53.    Again, believing the issue had been put to bed, Frank Hyundai tried to

7    communicate with HMA to finalize the plans and reach 100% approval, but HMA

8    went silent.

9        54.    Frank Hyundai, understanding it had 75% approval to commence

10   construction and HMA's agreement via the Facility Addendum that its plans complied

11   with GDSI 2.0, made every effort to commence construction and finalize the

12   remaining parts of its plans.  Those aspects of the plan included minor changes to

13   interior finishes and other facial aspects of the building.  Despite Frank Hyundai's

14   efforts, HMA did nothing. Notably, if Frank Hyundai had been allowed to commence

15   construction, its facility would not have been subject to upgrade for ten (10) years

16   under Cal. Veh. Code s. 11713.13(c)(3)(A).  And, that makes HMA's conduct after

17   going silent regarding construction plans even more suspicious.

18       55.    On June 29, 2022, Frank Hyundai submitted to HMA its Notice of intent

19   to sell its dealership assets to the Dalton Automotive Group.

20       56.    This Notice is required by Frank Hyundai's Dealer Agreement and

21   California law.

22       57.    The Notice sets in motion a back and forth between HMA and the

23   purchaser of Frank Hyundai's assets regarding the purchaser's qualifications to

24   operate a Hyundai franchised motor vehicle dealership.

25       58.    Frank Hyundai's Dealer Agreement also requires that HMA not

26   "unreasonably withhold its consent" to Frank Hyundai's proposed transfer of

27   ownership. Ex. A at p. 2, § 5.

28       59.    This process is also heavily-regulated by statute and requires HMA to

- 13 -

163720665

1  keep the selling dealership and the purchaser updated on the information required to

2  meet its guidelines.  § 11713.3(d) *et seq.*, Cal Veh. Code.

3      60.    After the purchaser has provided all of the required information, a 60-

4  day statutory clock starts for HMA to approve or deny the purchaser.

5      61.    In many instances, especially those involving a purchaser that has never

6  operated a new motor vehicle dealership franchised by the brand he or she is

7  purchasing, the franchisor will take the entire statutorily-provided time period to

8  review the application.

9      62.    Thus, Frank Hyundai was very surprised to receive a denial letter from

10  HMA just a little over thirty (30) days after it had submitted its Notice.  In fact, HMA

11  did not even wait until the purchaser had provided all the required information to deny

12  the request, a very unusual action, especially considering that Toyota and Subaru had

13  approved the same purchaser.

14      63.    HMA also never informed Dalton Automotive Group or Frank Hyundai

15  that Dalton Automotive Group's application was incomplete, as is required by section

16  11713.3(d)(2)(A)(iii) of the California Vehicle Code.  (noting that "[a]s soon as

17  practicable after receipt of the proposed transferee's application, the manufacturer or

18  distributor shall notify the franchisee and proposed transferee of information needed

19  to make the application complete.").  Instead, HMA simply denied the application

20  because it was allegedly lacking sufficient documentation, which appears pretextual

21  considering the timing and HMA's failure to provide the mandatory statutory notice

22  that "information is needed to make the application complete*.*"

23      64.    Thereafter, Frank Hyundai's owners reworked the deal, allowing the

24  purchaser to close on the sale of the Subaru and Toyota franchises without purchasing

25  Frank Hyundai's assets.

26      65.    Frank Hyundai later learned that the real reason for HMA's denial of the

27  purchaser was due to HMA's desire for the purchaser to move the Hyundai dealership

28  to a different parcel of land.  Upon information and belief, the requirement for

163720665

1    additional land may actually be a pretext for HMA to approve a preferred-buyer

2    candidate, rather than those with which Frank Hyundai has negotiated at arms-length.

3        66.    HMA informed the purchaser that it would not approve its application to

4    purchase the dealership absent it finding a contiguous, 5-acre parcel on the Mile of

5    Cars to which to relocate the Hyundai dealership, which is obviously practically

6    impossible.

7        67.    This too violates the California Motor Vehicle Franchise Practices Act.

8    HMA's evaluation of a purchaser under the Act is limited to the purchaser's

9    qualifications, and HMA is not permitted to extract future facility investments for its

10   approval of the purchaser.  Nevertheless, it is entirely plausible, indeed likely, that the

11   purchaser's refusal to accede to HMA's demand resulted in the denial described

12   *supra*.

13       68.    Moreover, HMA's denial constituted an unreasonable, namely

14   pretextual, withholding of its consent to a transfer of ownership under Frank

15   Hyundai's Dealer Agreement.  Ex. A, at p. 2, § 5.

16       69.    All of these demands by HMA are in contravention of the Facility

17   Addendum to Frank Hyundai's Dealer Agreement, the Dealer Agreement itself, the

18   letter drafted by HMA and executed by Frank Hyundai and HMA that confirmed

19   Frank Hyundai's facility plans met HMA's facility requirements, the Automobile

20   Dealers Day in Court Act, and California law.

21       70.    Moreover, HMA's representations submarined Frank Hyundai's asset

22   sale to this purchaser, resulting in it having to go back to market with a single

23   dealership that would assuredly garner it less value than previously, due to the unique

24   opportunity to purchase three dealerships in essentially the same location.

25       71.    And, HMA's underhanded tactics continued.  Frank Hyundai identified

26   multiple other potential purchasers of its assets, but each time those candidates were

27   told by HMA that they would need a contiguous, 5-acre parcel on the Mile of Cars,

28   or would need to make material changes to the existing facility costing millions of

163720665

dollars, in order to be approved to close on the purchase of Frank Hyundai's assets.[1] Recognizing the absurdity of this demand, these potential purchasers were scared off by HMA too.

72.     HMA also presented an alternative purchaser to Frank Hyundai, but upon information and belief, that purchaser had no prior experience operating motor vehicle dealerships in the United States itself.  Ironically, after-the-fact in communications defending its denial of Dalton Automotive Group, HMA argued the same ground supported its denial of Dalton Automotive Group's purchase of Frank Hyundai's assets originally.

73.     Frank Hyundai has found an alternative purchaser of its assets, but will receive $6.65 million less for those assets than it negotiated with the previous purchaser in June 2022.

74.     On April 24, 2023, Frank Hyundai submitted a second asset purchase agreement to HMA requesting HMA approve Frank Hyundai's alternative purchaser. At the same time, attorneys for HMA and Frank Hyundai had been exchanging letters regarding this dispute.

75.     When it became clear that HMA would not cease its coercive and illegal demands, Frank Hyundai indicated that it planned to file the present suit against HMA.

76.      Less than a week later on May 3, 2023, HMA served Frank Hyundai with two (2) Notices of Termination that inaccurately alleged violations of Frank Hyundai's Dealer Agreement.  The allegations were based entirely on the contents of an agreement, which pursuant to the Notices of Termination HMA had admittedly never reviewed, and thus was unaware of the contents.[2]  Nevertheless, HMA alleged

---

[1] As noted *supra*, if Frank Hyundai had been able to commence construction instead of being frustrated by HMA's conduct, HMA's demand would have also violated Cal. Veh. Code s. 11713.13(c)(3)(A).

[2] The Notices of Termination are being challenged via a separate proceeding in front of the California Motor Vehicle Board because that administrative body retains

1   that the agreement violated the Dealer Agreement, which is patently incorrect.

2   Likewise, HMA's characterization of an agreement, which it had not seen, was

3   patently inaccurate.

4        77.    The timing of these Notices of Termination reveals their pretextual

5   nature. They also show that HMA will stop at nothing to coerce and punish Frank

6   Hyundai.

7        78.    Revealing the lengths that HMA will go in coercing Frank Hyundai,

8   HMA later issued two additional Notices of Termination, forcing Frank to litigate a

9   total of four (4) Notices of Termination in front of the California New Motor Vehicle

10  Board in a separate but related administrative proceeding that remains pending to this

11  day.

12       79.    At the same time, Frank Hyundai has continued to try and market its

13  dealership, having had discussions with over ten (10) potential purchasers. Many of

14  these potential purchasers already operate Hyundai franchises and/or numerous other-

15  brand motor vehicle franchises. They are decidedly-qualified purchasers of an

16  automotive franchise, no matter the brand, and have the financial wherewithal to close

17  on the transaction. But, when these potential purchasers speak to HMA, whether

18  formally in the context of the proposed transaction having been submitted to HMA

19  for approval or informally before that formal notification is sent, they report back to

20  Frank Hyundai that HMA's unreasonable demands for a relocation, additional real

21  estate, facility renovation or a combination of all three (3) make the transaction

22  infeasible.

23       80.    HMA's unreasonable, illogical and illegal demands in these discussions

24  are clearly preventing Frank Hyundai from receiving fair market value for the largest

25  volume Hyundai franchise in California and, as of this writing, Frank Hyundai has

26

27

28  jurisdiction over challenges to franchisors' attempted termination of their franchisees
    or dealerships and has no jurisdiction to adjudicate the claims raised herein.

163720665

not found a purchaser willing to pay the $30,246,890 million[3] that its first purchaser agreed to for the Hyundai franchise.  HMA has caused Frank Hyundai significant damages and thus it feels compelled to file this lawsuit.  Again, Frank Hyundai simply desires to sell its franchise at a fair price, but HMA's own tactics continue to prevent Frank Hyundai from doing so, even attempting to terminate Frank Hyundai's franchise for misunderstood and unjustified bases making the sale of the same even more difficult for Frank Hyundai, and forcing it to remain in a contractual relationship with an objectively-awful business "partner in HMA.

81.    Clearly, HMA does not intend to let the owners of Frank Hyundai simply sell their assets and walk away.  Thus, Frank Hyundai is left with no choice but to vindicate itself.

82.    Frank Hyundai has also expended substantial funds based on HMA's agreement in the Facility Addendum that its renovated facility would meet the requirements of the Accelerate Program.

83.    If HMA maintains its position, those funds expended in reliance on the Facility Addendum will be lost and Frank Hyundai will also lose the monies it has been accruing under the Accelerate Program since March 2022 that were supposed to be released to Frank Hyundai in accordance with the Accelerate Program upon HMA's acceptance of Frank Hyundai's design plans.

84.    It is clear that HMA's demand for a replacement, contiguous, 5-acre parcel for the operations of Frank Hyundai, or millions of dollars in dealership renovations, whether by the current ownership group or a prospective purchaser, constitute a requirement HMA is imposing on the franchise relating to its facility.

85.    Similarly, this absurd demand from HMA has clearly prevented Frank

---

[3] This value represents the goodwill of the franchise, options to purchase two pieces of real estate and concomitant assets, sometimes referred to as furniture, fixtures and equipment or "FFE" or in this particular case consisting mainly of Frank Hyundai's inventory of new and used motor vehicles.

1    Hyundai from closing on a sale of assets to multiple purchasers and realizing the full

2    value of the same.

3        86.    All conditions precedent to maintaining this action have been fulfilled

4    and/or were waived by HMA.

5    **COUNT I – HMA's Violation of § 11713.3(e) of the California Vehicle Code**

6        87.    Frank Hyundai realleges and reincorporates paragraphs 1 - 86 as if laid

7    out fully herein.

8        88.    Frank Hyundai qualifies for protection under s. 11713.3(e) of the

9    California Vehicle Code as a franchised new motor vehicle dealer.

10       89.    S. 11713.3(e) also regulates HMA, as a distributor and franchisor.

11       90.    HMA's representations and conduct surrounding the sale of Frank

12   Hyundai's assets, of which it provided Notice of on June 29, 2022, prevented or

13   attempted to prevent in Frank Hyundai from receiving fair and reasonable

14   compensation for the value of its franchised business.

15       91.    HMA had no legitimate basis for its representations, demands, and

16   conduct regarding the sale of Frank Hyundai's assets.

17       92.    HMA's conduct also spooked other potential purchasers of Frank

18   Hyundai's assets after the June 2022 agreement did not close.

19       93.    To wit, Frank Hyundai submitted another Notice of Sale in May 2023,

20   but before HMA could approve or deny that proposed transfer of dealership assets the

21   potential purchaser backed out, again because of the illegal demands HMA was

22   making regarding renovations, real estate, and the like.

23       94.    Frank Hyundai was damaged by HMA's representations, demands and

24   conduct, including receiving less money than the original purchaser offered for the

25   same assets from a substitute purchaser and as of today, having no approved purchaser

26   at any price, resulting in a complete loss.

27       WHEREFORE Frank Hyundai requests this Court enter a judgment against

28   HMA finding its conduct violated California law and awarding Frank Hyundai

163720665

1   monetary damages, attorney's fees and costs, along with such other relief as this Court

2   deems just and equitable.\

3   **COUNT II – HMA's Violation of § 11713.13(c) of the California Vehicle Code**

4   95.    Frank Hyundai realleges and reincorporates paragraphs 1 - 86 as if laid

5   out fully herein.

6   96.    Frank Hyundai qualifies for protection under s. 11713.13(c) of the

7   California Vehicle Code as a franchised new motor vehicle dealer.

8   97.    S. 11713.13(c) also regulates HMA, as a distributor and franchisor.

9   98.    HMA's demands that Frank Hyundai needs, and must acquire, real estate

10  totaling five, contiguous acres, well beyond what exists at its current location or what

11  is available on the Mile of Cars, or expend millions of dollars to renovate a facility

12  beyond what HMA has approved in Frank Hyundai's facility plans, to qualify for the

13  Accelerate Program is unreasonable in light of all existing circumstances.

14  99.    HMA has required Frank to make a material alteration, expansion, or

15  addition to its dealership facility that is not reasonable in light of all existing

16  circumstances.  Most notably, HMA's agreement to Frank Hyundai's actual facility

17  plans, the lack of available real estate on the Mile of Cars, the lack of a need for such

18  alteration, expansion, or addition in light of Frank's sales and service performance,

19  and, HMA's inability to distribute enough new motor vehicles to meet consumer

20  demand.    HMA has also scuttled at least one signed asset purchase agreement and

21  other potential ones by requiring this change.  HMA is withholding Frank Hyundai's

22  accrued Accelerate monies based on the same.  Frank Hyundai has no choice but to

23  participate in the Accelerate Program, because without its economic incentives it

24  would be at a significant competitive disadvantage in the marketplace.  This conduct

25  amounts to an unlawful requirement by HMA and coercion to accomplish its goals.

26  100.    HMA's position is also in direct contradiction of its 75% approval of

27  Frank Hyundai's renovation plans and its execution of the Facility Addendum.

28  101.    HMA's position is also not reasonable considering Frank Hyundai's

1   strong sales and service performance operating from its current location.

2        102.   As a result of HMA's representations and conduct, Frank Hyundai lost

3   monies expended in reliance on HMA's approval of the renovation of its dealership

4   facilities and monies it would otherwise be entitled to under the Accelerate Program.

5        WHEREFORE Frank Hyundai requests this Court enter a judgment against

6   HMA finding its conduct violated California law and awarding Frank Hyundai

7   monetary damages, attorney's fees and costs, along with such other relief as this Court

8   deems just and equitable.

9        **COUNT III – HMA's Violation of the Dealer's Day in Court Act**

10       103.   Frank Hyundai realleges and reincorporates paragraphs 1 - 86 as if laid

11   out fully herein.

12       104.   Frank Hyundai qualifies for protection under 15 U.S.C. § 1222 as a

13   franchised new motor vehicle dealer.

14       105.   HMA is also regulated under 15 U.S.C. § 1222 as a distributor and

15   franchisor of new motor vehicle dealerships.

16       106.   HMA's representations and conduct described in more detail *supra*,

17   including, but not limited to, scuttling the sale of Frank Hyundai's assets to the

18   original and at least one substitute purchaser and its about-face on Frank Hyundai's

19   qualifications for the Accelerate Program, are not in good faith under the Dealer

20   Agreement.

21       107.   Frank Hyundai has suffered significant damages, including loss of value

22   of assets, of accrued Accelerate Program funds, and funds expended towards its

23   renovation as a result of HMA's bad faith actions.

24       WHEREFORE Frank Hyundai requests this Court enter a judgment against

25   HMA finding its conduct violated Federal law and awarding Frank Hyundai monetary

26   damages, and costs, along with such other relief as this Court deems just and

27   equitable.

28

163720665

## COUNT IV – HMA's Breach of the Facility Addendum

108.   Frank Hyundai realleges and reincorporates paragraphs 1 - 86 as if laid out fully herein.

109.   The Facility Addendum is a binding contract between HMA and Frank Hyundai, that is part of Frank Hyundai's Dealer Agreement, entitling Frank Hyundai to funds pursuant to the Accelerate Program for its commencement of and completion of a renovation of its dealership facility. *See* Ex. A, at pp. 39-42.

110.   HMA has breached that contract based on its withholding of Accelerate Program funds from Frank Hyundai and its insistence that Frank Hyundai has not qualified for the same, despite its agreement in the Facility Addendum and the letter confirmation to the contrary.

111.   Frank Hyundai has suffered significant damages, including loss of accrued Accelerate Program funds, and funds expended towards its renovation as a result of HMA's breach of the Facility Addendum.

112.   Frank Hyundai attempted to carry out its obligations pursuant to the Facility Addendum but HMA's actions frustrated Frank Hyundai's attempts.

WHEREFORE Frank Hyundai requests this Court enter a judgment against HMA finding its conduct breached the Facility Addendum and Frank Hyundai has complied with the Accelerate Program and GDSI 2.0 and is so qualified for the concomitant incentives and awarding Frank Hyundai monetary damages, along with such other relief as this Court deems just and equitable.

## COUNT V – HMA's Breach of the Dealer Agreement

113.   Frank Hyundai realleges and reincorporates paragraphs 1 - 86 as if laid out fully herein.

114.   The Dealer Agreement (Ex. A) is a binding contract between HMA and Frank Hyundai entitling Frank Hyundai to operate its Hyundai-brand new motor vehicle dealership and obligating HMA to, among other things, not "unreasonably withhold its consent" to a sale or transfer of ownership of the Frank Hyundai's assets

1  to another purchaser.

2      115.   HMA has breached that contract based on its unreasonable withholding

3  of consent to Frank Hyundai's proposed transfer to Dalton Automotive Group,

4  namely the pretextual basis for the same and HMA's attempts to extract unlawful and

5  coercive concessions from Dalton Automotive Group to obtain HMA's consent.

6      116.   Frank Hyundai has suffered significant damages, including entering into

7  a subsequent asset purchase agreement resulting in it receiving $6.65 million less than

8  it would have from Dalton Automotive Group for the same assets.

9      117.   Frank Hyundai suffered further damages with the second potential

10  purchaser that backed out after HMA's conduct in withholding its consent to the

11  proposed transfer absent the purchaser acceding to HMA's unreasonable and unlawful

12  demands.

13      118.   Frank Hyundai has otherwise complied with the required provisions of

14  the Dealer Agreement and is not in breach of the same.

15      WHEREFORE Frank Hyundai requests this Court enter a judgment against

16  HMA finding its conduct breached the Dealer Agreement by unreasonably

17  withholding its consent to the proposed transfer to Dalton Automotive Group

18  awarding Frank Hyundai monetary damages, along with such other relief as this Court

19  deems just and equitable.

20      **COUNT VI – Tortious Interference with Contract**

21      119.   Frank Hyundai realleges and reincorporates paragraphs 1 - 86 as if laid

22  out fully herein.

23      120.   Frank Hyundai executed an asset purchase agreement with the June 2022

24  purchaser.  The asset purchase agreement was a valid contract.

25      121.   HMA was aware of Frank Hyundai's entering into the asset purchase

26  agreement with the June 2022 purchaser.

27      122.   HMA's demands and actions described in greater detail *supra* were

28  designed to induce a breach or disruption of the contractual relationship memorialized

in the asset purchase agreement.

123.   The asset purchase agreement was disrupted because of HMA's demands and actions.

124.   Similarly, Frank Hyundai entered into a second asset purchase agreement with a subsequent buyer, which HMA again frustrated with its conduct.

125.   As a result, Frank Hyundai has suffered significant damages, including loss of value of its assets, and concomitant additional costs with having to take those assets back to market.

WHEREFORE Frank Hyundai requests this Court enter a judgment against HMA finding its conduct violated California law and awarding Frank Hyundai monetary damages along with such other relief as this Court deems just and equitable.

## COUNT VII – Breach of Covenant of Good Faith and Fair Dealing – Facility Addendum

126.   Frank Hyundai realleges and reincorporates paragraphs 1 - 86 as if laid out fully herein.

127.   The Facility Addendum is a binding contract between HMA and Frank Hyundai entitling Frank Hyundai to funds pursuant to the Accelerate Program for its commencement of and completion of a renovation of its dealership facility.  The purpose of the Facility Addendum was to provide Frank Hyundai the approval by HMA so that Frank Hyundai could complete a facility renovation under the Accelerate Program.

128.   HMA has breached the covenant of good faith and fair dealing implied in that contract based on its withholding of Accelerate Program funds from Frank Hyundai, its insistence that Frank Hyundai has not qualified for the same, and its preventing Frank Hyundai from completing the facility renovation despite its agreement in the Facility Addendum to the contrary.

129.   Frank Hyundai has suffered significant damages, including loss of accrued Accelerate Program funds, and funds expended towards its renovation as a

163720665

result of HMA's breach of the Facility Addendum.

130.   Frank Hyundai has otherwise carried out its obligations under the Facility Addendum and is not in breach of the same.

WHEREFORE Frank Hyundai requests this Court enter a judgment against HMA finding its conduct breached the covenant of good faith and fair dealing implied the Facility Addendum and Frank Hyundai has complied with the Accelerate Program and GDSI 2.0 and is so qualified for the concomitant incentives and awarding Frank Hyundai monetary damages, along with such other relief as this Court deems just and equitable.

### COUNT VIII – Breach of Covenant of Good Faith and Fair Dealing – Dealer Agreement

131.   Frank Hyundai realleges and reincorporates paragraphs 1 - 86 as if laid out fully herein.

132.   The Dealer Agreement (Ex. A) is a binding contract between HMA and Frank Hyundai entitling Frank Hyundai to operate its Hyundai-brand new motor vehicle dealership and obligating HMA to, among other things, not "unreasonably withhold its consent" to a sale or transfer of ownership of the Frank Hyundai's assets to another purchaser.

133.   HMA has breached the covenant of good faith and fair dealing implied in that contract based on its unreasonable withholding of consent of Frank Hyundai's proposed transfer to Dalton Automotive Group or the substitute purchaser, the pretextual nature of the same and HMA's attempts to extract unlawful and coercive concessions from Dalton Automotive Group and the substitute purchaser in return for providing its consent.

134.   Frank Hyundai has suffered significant damages, including entering into a subsequent asset purchase agreement resulting in it receiving $6.65 million less than it would have from Dalton Automotive Group for the same assets and having the

1   substitute purchaser back out entirely, leaving Frank Hyundai with no purchaser for

2   its assets.

3       135.   Frank Hyundai has otherwise carried out its obligations under the

4   Facility Addendum and is not in breach of the same.

5       WHEREFORE Frank Hyundai requests this Court enter a judgment against

6   HMA finding its conduct breached the covenant of good faith and fair dealing implied

7   the Dealer Agreement by unreasonably withholding its consent to the proposed

8   transfer to Dalton Automotive Group awarding Frank Hyundai monetary damages,

9   along with such other relief as this Court deems just and equitable.

### COUNT IX – Intentional Interference with Prospective Business Advantage

12      136.   Frank Hyundai realleges and reincorporates paragraphs 1 - 86 as if laid

13  out fully herein.

14      137.   Frank Hyundai had an economic relationship with the Dalton

15  Automotive Group, relating to among other aims, selling its Hyundai dealership assets

16  to Dalton Automotive Group for Frank Hyundai's economic benefit.

17      138.   HMA was aware of Frank Hyundai's economic relationship with Dalton

18  Automotive Group.

19      139.   To wit, Frank Hyundai submitted an asset purchase agreement with

20  Dalton Automotive Group to HMA that included the sale of its Hyundai assets to

21  Dalton Automotive Group.

22      140.   HMA's coercion and extortion of Dalton Automotive Group to force it

23  to purchase more or different real estate to operate a Hyundai dealership, or commit

24  to make millions of dollars in additional facility changes, disrupted the relationship

25  between Frank Hyundai and Dalton Automotive Group that was memorialized in the

26  asset purchase agreement.

27      141.   HMA also interfered with economic relationships with other potential

28  purchasers that had the probability of future economic benefit to Frank Hyundai,

163720665

including a substitute purchaser that Frank Hyundai notified HMA of.

142.   HMA's conduct also violated numerous California laws, as alleged *supra*.

143.   HMA actions described *supra* were purposefully taken to disrupt the relationship between Frank Hyundai and Dalton Automotive Group, potentially as a pretext for a HMA-preferred buyer to be substituted for Dalton Automotive Group.

144.   Similarly, HMA's actions also disrupted Frank Hyundai's relationship with the substitute purchaser.

145.   Frank Hyundai suffered economic damages as a result of HMA's wrongful conduct.

WHEREFORE Frank Hyundai requests this Court enter a judgment against HMA finding that its conduct constituted intentional interference with a prospective business advantage and awarding Frank Hyundai monetary damages, along with such other relief as this Court deems just and equitable.

### COUNT X – Negligent Interference with Prospective Economic Advantage

146.   Frank Hyundai realleges and reincorporates paragraphs 1 - 86 as if laid out fully herein.

147.   Frank Hyundai had an economic relationship with the Dalton Automotive Group, relating to among other aims, selling its Hyundai dealership assets to Dalton Automotive Group for Frank Hyundai's economic benefit.

148.   HMA was aware of Frank Hyundai's economic relationship with Dalton Automotive Group.

149.   To wit, Frank Hyundai submitted an asset purchase agreement with Dalton Automotive Group to HMA that included the sale of its Hyundai assets to Dalton Automotive Group.

150.   HMA's coercion and extortion of Dalton Automotive Group to force it to purchase more or different real estate to operate a Hyundai dealership, or commit

163720665

to make millions of dollars in additional facility changes, disrupted the relationship between Frank Hyundai and Dalton Automotive Group that was memorialized in the asset purchase agreement.

151.    HMA also interfered with economic relationships with other potential purchasers that had the probability of future economic benefit to Frank Hyundai, including a substitute purchaser that Frank Hyundai notified HMA of.

152.    HMA's conduct violated numerous California laws, as alleged *supra*, and was not taken with reasonable care.

153.    HMA failed to act consistently with its obligations of good faith and fair dealing or the care expected of Frank Hyundai's business partner.

154.    HMA knew or should have known that its actions described *supra* would disrupt the relationship between Frank Hyundai and Dalton Automotive Group.

155.    Similarly, HMA's actions also disrupted Frank Hyundai's relationship with the substitute purchaser.

156.    Frank Hyundai suffered economic damages as a result of HMA's wrongful conduct.

WHEREFORE Frank Hyundai requests this Court enter a judgment against HMA finding that its conduct constituted negligent interference with a prospective business advantage and awarding Frank Hyundai monetary damages, along with such other relief as this Court deems just and equitable.

## COUNT XI – Violation of California Business and Professions Code § 17200, *et seq.*

157.    Frank Hyundai realleges and reincorporates paragraphs 1 - 86 as if laid out fully herein.

158.    Based on the actions described *supra*, HMA engaged in unfair business practices as contemplated by California Business and Professions Code § 17200, *et seq.* ("Unfair Competition Law" or "UCL").

159.    Pursuant to the UCL, unfair business practices include "unlawful, unfair,

or fraudulent" acts or practices.

160.  HMA's conduct constituted an unlawful business practice because it violated California Vehicle Code s. 11713.3(e), s. 11713.13(c), and the Automobile Dealers Day in Court Act, and the violation of any law renders a practice unlawful for purposes of the UCL.

161.  HMA's conduct constituted an unfair business practice because it offends public policy, and was immoral, unethical, oppressive, coercive, anti-competitive, and damaging to Frank Hyundai.

162.  Frank Hyundai suffered damages as a result of HMA's unlawful and unfair business practices.

WHEREFORE Frank Hyundai requests this Court enter a judgment against HMA finding that its conduct constituted unlawful and unfair trade practices and awarding Frank Hyundai monetary damages, and attorney's fees along with such other relief as this Court deems just and equitable.

Plaintiff demands a jury trial on all issues so triable.

Dated:        October 5, 2023                    TROUTMAN PEPPER HAMILTON
                                                 SANDERS LLP


                                                 By: /s/ Michael J. Whitton
                                                     Michael J. Whitton
                                                     Peter N. Villar

                                                     BASS SOX MERCER
                                                     Jason T. Allen
                                                     pro hac vice forthcoming
                                                     W. Kirby Bissell
                                                     pro hac vice forthcoming

                                                     Attorneys for Defendant
                                                     Plaintiff Gen 2 H-Cars, Inc. d/b/a
                                                     Frank Hyundai

163720665